UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CURTIS TREY SEASTRUNK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:05-CV-0531-G |
| DARWELL INTEGRATED ) | |
| TECHNOLOGY, INC., ET AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendants Darwell Integrated Technology, Inc. ("DIT"), DTS International, Inc. ("DTS"), and Roger Darisse ("Darisse") (collectively, "the defendants") to dismiss the complaint of the plaintiff Curtis Trey Seastrunk ("Seastrunk") for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted, and for failure to plead fraud with particularity. For the reasons discussed below, the defendants' motion is granted.

I. BACKGROUND

Daniel Fuhrmann ("Fuhrmann") authored various works of computer code, including the Liebert Protocol Convertor. Original Complaint ("Complaint") ¶¶ 8-10.

On or about February 11, 1989, DTS agreed to pay Fuhrmann certain royalties, until December 15, 2008, to use the Liebert Protocol Convertor.  *Id.* ¶ 12; *see generally* Royalty Agreement, *attached to* Complaint as Exhibit C.  DTS paid Fuhrmann royalties under the terms of the Royalty Agreement until sometime in 2001.  *Id.* ¶ 13.  After this time, DTS continued to use the program without paying royalties.  *Id.*

In January 2004, Darisse placed DTS into Chapter 7 bankruptcy in the Bankruptcy Court for the Northern District of Texas but did not list Fuhrmann as a creditor or otherwise notify him of the bankruptcy action.  *Id.* ¶ 14.  Around that time, Darisse set up DIT, another company, through his wife, Sheila Darisse.  *Id.* ¶ 15.  DIT used the Liebert Protocol Convertor without a license.  *Id.*

On or about August 8, 2004, Fuhrmann assigned the copyright to the Liebert Protocol Convertor, as well as other works, to Seastrunk.  *Id.* ¶ 10; *see generally* Agreement for Assignment of Copyright ("Assignment Agreement"), *attached to* Complaint as Exhibit A.  As set forth in the Assignment Agreement, Fuhrmann "grant[ed], [sold] and convey[ed] to Seastrunk as Grantee, all rights in the Software, including all rights of copyright, and also including all rights to assert any claims that the Software has been infringed by third parties or that they have wrongfully made derivative works of same."  Assignment Agreement ¶ 1.  Seastrunk registered the copyright for the Liebert Protocol Convertor on or about September 20, 2004.  Complaint ¶ 11.

Seastrunk filed this case on March 16, 2005, alleging copyright infringement, breach of contract, fraud, and conspiracy. *See generally* Complaint. The defendants filed this motion to dismiss on May 9, 2005. *See generally* Rule 12 Pre-Answer Motion to Dismiss for Lack of Subject Matter Jurisdiction, Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted, and Motion to Dismiss for Failure to Plead Properly ("Motion to Dismiss").

## II.  ANALYSIS

The defendants seek dismissal of certain claims raised by Seastrunk on three grounds: (1) lack of subject matter jurisdiction over the claims for breach of royalty contract, fraud, civil conspiracy, joint enterprise, and joint and several liability; (2) failure to state a claim upon which relief can be granted on the claim for copyright infringement by DTS;[1] and (3) failure to plead with particularity on the claim for fraud. *See generally* Motion to Dismiss.

### A.  Subject Matter Jurisdiction

#### 1.  *The Standing Requirement*

Article III of United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." U.S. Const. Art. III § 2. Standing -- *i.e.*, the need to show that the plaintiff has a direct, personal stake in the outcome of the suit -- is an

---

[1] The defendants seek to dismiss only the copyright infringement claim against DTS, not the infringement claims against Darisse and DIT. Motion to Dismiss ¶¶ II(14), (16), and III.

- 3 -

"essential and unchanging part" of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-231 (1990)) (internal quotation marks omitted); see also *Sommers Drug Stores Company Employment Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("'Standing, since it goes to the very power of the court to act, must exist at all stages of the proceeding, and not merely when the action is initiated or during an initial appeal.'") (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C. Cir. 1983), *cert. denied*, 476 U.S. 1206 (1984)); *University of South Alabama v. American Tobacco Company*, 168 F.3d 405, 410 (11th Cir. 1999) (noting that "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."). As the Supreme Court explained in *Lujan,* the "irreducible constitutional minimum of standing" has three elements:

> First, the plaintiff[s] must have suffered an "injury in fact" --an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be

>"likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

504 U.S. at 560 (internal citations and footnote omitted).

Lack of standing is a defect in subject matter jurisdiction. See *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) (citing *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986)); see also *Corrigan*, 883 F.2d at 348 ("standing is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court.") (citing *United States v. One 18th Century Colombian Monstrance*, 797 F.2d 1370, 1374 (5th Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)).

Federal district courts have the unique power to make factual findings which are decisive of subject matter jurisdiction. See *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citing, among other authorities, *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947)), *cert. denied*, 454 U.S. 897 (1981). The district court has the power to dismiss for lack of subject matter jurisdiction -- and thus for lack of standing -- on any one of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413; *Robinson v. TCI/US West Communications Inc.*, 117 F.3d 900, 904 (5th Cir. 1997); see also *Haase*, 835 F.2d at 907 (noting that, to the extent the assessment of a plaintiff's standing turns on factual evidence, a court may consider all matters developed in the record at the time of its decision). Consistent

with *Williamson's* teaching, the following analysis of the plaintiff's standing is based upon the court's examination of the complaint supplemented by undisputed record evidence.

### 2.  *Standing to Bring Accrued Causes of Action Generally*

Seastrunk contends that he has standing to sue on the Royalty Agreement between Fuhrmann and DTS because Fuhrmann granted him "'all rights in the Software, including all rights of copyright,'" and "by necessary implication [the grant] assigned all claims of Fuhrmann which had accrued from *past* acts of Defendants." Plaintiff's Response to Defendants' Motion to Dismiss at 2-3 (emphasis in original). Seastrunk's contention, however, is incorrect.  A review of the federal Copyright Act and the applicable case law reveals that an assignment of copyright does not *per se* include the right to bring accrued claims related to the copyright.

According to the federal Copyright Act, "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it."  17 U.S.C. § 501(b).  The Copyright Act lists the following exclusive rights of the owner of a copyright:

>   (1)  to reproduce the copyrighted work in copies or phonorecords;
>
>   (2)  to prepare derivative works based upon the copyrighted work;

>    (3)  to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
>    (4)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
>    (5)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
>    (6)  in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.  The right to sue for accrued claims is not an exclusive right.  *Id.*; *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 884 (9th Cir. 2005).  This suggests that the right to sue for causes of action that accrued before the assignment of copyright is not among the rights of copyright.

Such a suggestion is bolstered by case law from other circuits, although the Fifth Circuit does not appear to have decided this precise issue.  For instance, in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991), the Second Circuit considered a copyright case in which the assignee, the plaintiff in the action, bought claims for both copyright infringement *and* "'any and all rights assertable under copyright against the Infringing Composition in any part of the world which may have heretofore arisen or which may hereafter arise.'"  The court

concluded that "a copyright owner can assign its copyright but, if the accrued causes of action [for past infringement] are not expressly included in the assignment, the assignee will not be able to prosecute them," and if the infringement occurred before the plaintiff bought the copyright, the plaintiff can sue the infringer "not out of its ownership of the copyright, but from its ownership of the claims themselves which it purchased, along with the copyright." *Id.* at 981.  Other courts that have found standing to prosecute accrued causes of action do so because such a right was expressly included in the assignment.  See *Sabroso Publishing, Inc. v. Caiman Records America, Inc.*, 141 F. Supp. 2d 224, 227-28 (D. P.R. 2001) (finding standing for the assignee when the assignor assigned "all of its copyrights, trademarks and assets, including, without limitation, all past, present and future actions for copyright infringement that have accrued to this date, or may accrue in the future . . . "); *Godinger Silver Art Company, Ltd. v. International Silver Company*, No. 95 CIV. 9199 (LMM), 1995 WL 702357, at *4 (S.D. N.Y. Nov. 28, 1995) (finding standing for the assignee when the assignor assigned "'whatever right, title or interest [it] may have . . . including the right to sue for past, present and future infringements thereof.'").

Thus, contrary to Seastrunk's assertion, the assignment of a copyright does not necessarily imply a grant of accrued claims.  Seastrunk may not bring accrued claims because the Assignment Agreement does not expressly assign him the right to do so.

The implications for the defendants' motion to dismiss for lack of subject matter jurisdiction follow.

### 3. *The Defendants' Particular Grounds for Dismissal*

#### (a) Breach of Contract

The defendants argue that Seastrunk does not have standing to sue for breach of contract because he was not a party to the Royalty Agreement, and the Assignment Agreement "does not even purport to transfer Fuhrmann's rights to receive royalty payments from DTS or assign Fuhrmann's personal service obligations under the Royalty Agreement." Defendant's Motion to Dismiss at 3. Under Texas law, "a person who is neither a signatory to nor an intended third-party beneficiary of a contract has no standing to sue for breach of that contract." *Miller v. Schwartz*, No. 14-04-00352-CV, 2005 WL 757249, at *2 (Tex. App. -- Houston [14th Dist.] Apr. 5, 2005) (citing *Holloway v. Atlantic Richfield Co.*, 970 S.W.2d 641, 644 (Tex. App.--Tyler 1998, no writ)). Accordingly, based on the analysis in the preceding section, the court grants the defendants' motion to dismiss Seastrunk's breach of contract claim under Rule 12(b)(1). Because Seastrunk was neither a signatory nor a third-party beneficiary of the Royalty Agreement, and the Assignment Agreement does not expressly give him the right to bring causes of action that accrued before the copyright was assigned, Seastrunk lacks standing to sue for breach of the Royalty Agreement.

(b) <u>Fraud and Civil Conspiracy</u>

The defendants also argue that because Seastrunk lacks standing to sue for breach of the Royalty Agreement, he also lacks standing to sue for fraud or civil conspiracy. First, the defendants argue that because Seastrunk was not a creditor of DTS, he "could not have relied on or been injured by any alleged misrepresentation or failure to disclose by DTS in the bankruptcy proceeding," making his fraud claim untenable. Motion to Dismiss at 4. Next, they argue that since Seastrunk was not a party to the Royalty Agreement, "he cannot show that he was injured by any alleged conspiracy between the Defendants to defraud the U.S. Bankruptcy Court and/or the creditors of DTS." Motion to Dismiss at 5.

Seastrunk's claims of fraud and civil conspiracy are derived from his contract claim. He argues that the defendants committed fraud by making misrepresentations and failing to disclose information about the Royalty Agreement to the Bankruptcy Court, and that they did so in furtherance of a conspiracy to defraud their creditors. Complaint ¶¶ 37-49. However, without standing to sue on the contract, Seastrunk does not have standing to sue on these claims that derive from it because he was not injured by relying on the contract. See, e.g., *Greater Iowa Corporation v. McLendon*, 378 F.2d 783, 792 (8th Cir. 1967) (finding that the only party with standing to attack the validity of transactions between contracting parties was the party who was allegedly defrauded, and that the plaintiffs, as strangers to the contract, had no

standing to inject themselves between the contracting parties).  Consequently, the defendants' motion to dismiss Seastrunk's claim of fraud under Rule 12(b)(1) is granted.

(c)  Joint Enterprise & Joint and Several Liability

Finally, the defendants argue that since Seastrunk lacks standing to pursue any tort claims, he "cannot successfully claim a joint enterprise theory of liability against Defendants."  Motion to Dismiss at 6.  Because all of the claims contested by the defendants are being dismissed for lack of subject matter jurisdiction, it necessarily follows that Seastrunk cannot recover on these claims from any of the defendants; it is therefore unnecessary to decide whether DIT, DTS, and Darisse are jointly and severally liable on such claims.

B.  Failure to State a Claim of Copyright Infringement

Next, the defendants move to dismiss, on two grounds under F.R. Civ. P. 12(b)(6), Seastrunk's claim that DTS infringed his copyright:  (1) Seastrunk cannot recover against a company that ceased doing business many months before Seastrunk was assigned and registered the copyright, and (2) Seastrunk cannot claim copyright infringement because DTS was authorized to use the Liebert Protocol Converter by virtue of the Royalty Agreement between DTS and Fuhrmann.  Motion to Dismiss ¶ 16.  The court need not consider these grounds for dismissal because Seastrunk does not have standing to bring this claim.  As discussed above, the Assignment

Agreement did not expressly assign to Seastrunk the right to bring accrued causes of action related to the copyright. Seastrunk's claim against DTS for copyright infringement is dismissed *sua sponte* under Rule 12(b)(1) for lack of subject matter jurisdiction. See *Bridgmon v. Array Systems Corporation*, 325 F.3d 572, 575 (5th Cir. 2003) (explaining that courts have a duty to raise question of subject matter jurisdiction *sua sponte*).

### C. Failure to Properly Plead the Claim of Fraud

Because Seastrunk's claim of fraud is being dismissed for lack of subject matter jurisdiction, it is also unnecessary to determine whether Seastrunk pleaded fraud with the particularity required by Federal Rule 9(b). *See* FED. R. CIV. P. 9(b). However, the court notes that in this circuit, "articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir.) (citing *Mills v. Polar Molecular Corporation*, 12 F.3d 1170, 1175 (2nd Cir. 1993) (adopting the Second Circuit approach to deciding motions to dismiss under Federal Rule 9(b)), *cert. denied*, 522 U.S. 966 (1997).

### III. CONCLUSION

For the reasons discussed above, the defendants' motion to dismiss is **GRANTED**, and Seastrunk's claims for breach of contract, fraud, conspiracy, joint

enterprise, joint and several liability, and copyright infringement by DTS are **DISMISSED** without prejudice.[2] As a result, the only claims remaining in this action are those against DIT and Darisse for copyright infringement.

      **SO ORDERED**.

July 15, 2005.

                            _____
                            A. JOE FISH
                            CHIEF JUDGE

---

[2] The dismissal is without prejudice because in spite of the rule that an assignment of copyright must expressly assign the right to bring accrued claims, there is precedent in other circuits allowing a party to amend an assignment to clarify that it was intended to convey accrued causes of action. Accordingly, a party may cure a standing defect with a second assignment that explicitly transfers causes of action accrued prior to the initial assignment. See *Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315, 318 (S.D. N.Y. 1996) (giving effect to a "very late" amendment granting the plaintiff the right to bring accrued causes of action); *Godinger*, 1995 WL 702357, at *4 (S.D. N.Y. 1995) (holding that the plaintiff could cure its standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Company, Inc.*, 830 F. Supp. 614, 620 (N.D. Ga. 1993) (determining that a second assignment cured a standing defect). Thus, if Seastrunk can obtain an amendment to the Assignment Agreement that expressly grants him the right to bring accrued causes of action, the standing deficiency will be cured, and he may seek leave to re-file these claims.