**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **CURTIS TREY SEASTRUNK,** | § | |
| **Plaintiff/Counter-Defendant,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DARWELL INTEGRATED** | § | |
| **TECHNOLOGY, INC.,** | § | |
| **Defendant/Counter-Plaintiff,** | § | |
| | § | |
| **DTS INTERNATIONAL INC., d/b/a** | § | |
| **DARWELL TECHNOLOGY SYSTEMS,** | § | |
| **Defendant.** | § | |
| | § | **Civil Action No. 3:05-CV-0531-BF** |
| | § | **ECF** |
| **DARWELL INTEGRATED** | § | |
| **TECHNOLOGY, INC.,** | § | |
| **Third Party Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CURTIS TREY SEASTRUNK and** | § | |
| **SITE MONITORING SOLUTIONS,** | § | |
| **INC.,** | § | |
| **Third Party Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. The Court granted in part the motion for reconsideration, motion to amend judgment, and motion for new trial relating to the reasonableness and necessity of the attorney fees that this Court awarded Curtis Trey Seastrunk ("Plaintiff") (doc. 165), filed by Darwell Integrated Technology, Inc. ("Defendant"). This Court vacated the award of Plaintiff's attorney fees of $96,077.80 and costs of $7,949.00.

Plaintiff claimed attorney fees as the prevailing party on Defendant's counterclaim under the Texas Theft Liability Act ("TTLA"), TEX. CIV. PRAC. & REM. CODE § 134.005(b). Defendant's TTLA claim constituted only one claim against one party out of the many parties in this lawsuit who

brought claims against each other under federal and state law.[1]  The Court found that it did not appear that the eight claims that survived until the trial were so intertwined as to be inseparable from Defendant's TTLA claims under the Act and ordered Plaintiff to submit a new request for attorney fees segregating the fees to the extent that segregation is possible.  The Court further ordered Plaintiff to brief the reasonableness of his request for attorney fees.  Plaintiff stood on his claim that Texas law does not require him to segregate the fees.  Plaintiff not only reasserted his "right" to 60% of the core fees for services, but sought an additional $27,967.85 over and above the attorney fees of $96,077.80 which the Court had previously vacated.

On reconsideration, Plaintiff asserts that (1) Texas law controls both the award and the reasonableness of fees awarded; (2) Texas law mandates the award of costs and fees to Plaintiff as the prevailing party on a TTLA claim; (3) Texas law provides certain factors to determine the reasonableness of attorney fees; and (4) Texas law governs the need for, and manner of, segregation of the fees.

Defendant contends that Plaintiff should recover no attorney fees, objecting to: (1) Plaintiff's failure to raise his attorney fee claim until the pretrial order; and (2) Plaintiff's failure to produce evidence of his attorney fees in response to pretrial discovery.  Defendant also asserts that  attorney fees are not warranted because: (1) the Court found that Plaintiff's evidence was not credible and gave it no weight; (2) Plaintiff's sole reason for his failure to segregate fees is willfully misleading to this Court; (3) Plaintiff failed to segregate recoverable fees from non-recoverable fees as required; and (4) Plaintiff failed to segregate fees relating to his failed trademark infringement claims and all

---

[1] Defendant filed a Third Party Claim against Site Monitoring Solutions, Inc. ("SMS"), but only Seastrunk was accused of the theft of physical property from Defendant under the TTLA.

other claims voluntarily dismissed as part of the joint pretrial order (breach of contract, fraud, conspiracy, conversion, and unfair competition).

## Background

Plaintiff brought this action against Defendant for copyright infringement. Daniel Fuhrmann ("Fuhrmann") created two source codes known as the Liebert Protocol Convertor ("Convertor") and the Protocol Board Addressing Decode ("Decode"). (Pl.'s Am. Compl. at 3.) On August 8, 2004, Fuhrmann executed an Agreement for Assignment of Copyright and assigned to Plaintiff the copyrights to the Convertor and the Decode. (*Id.*) This agreement was clarified through an amended agreement on August 17, 2005. (*Id.*) Plaintiff registered the copyright for the Convertor on September 20, 2004 and registered the Decode on January 13, 2005. (*Id.* at 3–4.) Plaintiff claimed that Defendant was infringing his copyrights by using the Convertor and the Decode in Defendant's site monitoring programs. Plaintiff dropped all causes of action with respect to the Decode in open court before trial and presented no evidence relating to the Decode. At no time did Plaintiff ever claim he owned Defendant's Micore or LCI products.

Defendant alleged a third party claim against Plaintiff and SMS for copyright infringement. This case was about four pieces of source code: for Plaintiff, the Convertor and the Decode; for Defendant, LCI and Micore software (software that was wholly unrelated to the Convertor or the Decode because they functioned on different computer platforms). Defendant also brought third party claims for tortuous interference with existing contracts and unfair competition, in addition to counterclaims for breach of fiduciary duty, violation of the TTLA, and trade secret misappropriation.

After a bench trial, this Court found that Defendant was entitled to judgment on Plaintiff's claims and Plaintiff and SMS were entitled to judgment on Defendant's claims and counterclaims.

3

Accordingly, the Court found that Plaintiff and Defendant should take nothing by way of their causes of action against each other.  In postjudgment proceedings, the Court further found that even though this entire case had ended in a wash, Texas law requires this Court to award attorney fees to Plaintiff for the defense of Defendant's TTLA claim.  The Court awarded the fees requested. Defendant objected, and the Court vacated the award of fees and costs and agreed to give *de novo* consideration to the issue of attorney fees and costs.

### Defendant's Objections to Plaintiff's Failure to Properly Raise a Claim for Attorney Fees

First, the Court will consider Defendant's renewed objection to any award of attorney fees and its request that the Court exclude Plaintiff's evidence of attorney fees.  Defendant contends Plaintiff's claim for attorney fees should be barred because he failed to plead for attorney fees and failed to produce evidence of his attorney fees in response to pretrial discovery requests.  Previously, this Court found that although Plaintiff did not specifically plead for attorney fees under the TTLA in his complaint, he explicitly requested attorney fees under this statute in the joint pretrial order. The Court finds no reason to revisit its holding that the pretrial order supersedes any previous pleading.  Plaintiff's request was pleaded properly, and Defendant was on notice at trial that Plaintiff was seeking attorney fees under the TTLA.  Further, in a federal court bench trial, the Court usually determines the attorney fee issues in post trial proceedings.  Accordingly, although Plaintiff breached discovery rules by failing to produce records of the attorney fees in response to discovery requests, the breach does not warrant the denial of statutorily-required attorney fees.  Defendant's procedural objections are overruled.

### Defendant's Objection that the Court Found that Plaintiff's Evidence was not Credible and Gave it No Weight

4

The Court will now consider Defendant's claim that the fact that the Court found Plaintiff's evidence not credible and gave it no weight deprives Plaintiff of prevailing-party status under the TTLA. The TTLA is "a relatively new statute that has a unique provision compelling the award of reasonable and necessary attorney fees to a party that successfully defends against a claim under this act, without any prerequisite that the claim be found groundless, frivolous, or brought in bad faith." *Air Routing Int'l Corp. v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 684 (Tex. App. –Houston [14th Dist.] 2004, no writ). A "prevailing party" is one who is vindicated by judgment. *Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex. App.–Austin 1995, writ denied)(interpreting TEX. R. CIV. P. 131). The Court granted judgment to Plaintiff on Defendant's counterclaim under the TTLA. (Doc. 147.) The fact that Plaintiff is vindicated by the judgment on the theft claim gives him prevailing-party status for purposes of attorney fees under the TTLA because he need not prove that Defendant's theft claim was frivolous, malicious, or brought in bad faith, as required by most fee-shifting statutes.

## Defendant's TTLA Claim and Plaintiff's Defense

Next, the Court will address Defendant's contention that Plaintiff's sole reason for his failure to segregate attorney fees incurred in defending the theft claim is willfully misleading to the Court. The Court finds no evidence that Plaintiff's counsel attempted to willfully mislead the Court. However, the Court finds that Plaintiff's contention that he had to overcome Defendant's theft claim in order to fully recover on his copyright infringement claims against Defendant is without merit and does not constitute legal grounds for failure to segregate attorney fees in this case. The Court also finds meritless Plaintiff's contentions that: he "could not prevail on his copyright infringement claim without proving that he did not steal his code from Defendant," and (2) "the majority of issue

5

specific legal services in this case related to both [Plaintiff's] copyright infringement claim and his defense of Defendant's Theft Liability Act counterclaim."  Defendant admitted as early as June 10, 2005, that it did not own the Convertor and the Decode.  Defendant further admitted that Plaintiff owned the code and Defendant did not claim any right to it.  Plaintiff's claims of inseparability fail.

Moreover, in a Memorandum Opinion and Order in this case entered July 10, 2006, the Honorable A. Joe Fish, United States District Judge for the Northern District of Texas, explained the difference between an allegation that a person wrongfully physically deprived another person of his physical property and an allegation that a person deprived him of an intangible copyright, citing *Dorsey v. Money Mack Music, Inc*., 304 F. Supp.2d 858, 866 (E.D. La. 2003).  State law claims of conversion and theft of computer software would be preempted by copyright law unless the allegation was that the defendant withheld software in its tangible forms.  *Carson v. Dynergy, Inc*., 344 F.3d 446, 456-57 (5th Cir. 2003) (finding that plaintiff's conversion claim alleging that defendant wrongfully withheld plaintiff's software in its tangible forms was not preempted by federal copyright law).  Defendant's TTLA claim alleged only the theft of physical property which included software in its tangible form, as well as Honor Snacks and other personal property.  The property was allegedly taken during Plaintiff's departure from Defendant's workplace when he left Defendant's employ.  The TTLA claim for the taking of physical property was entirely separable from the claims involving the taking of intellectual property rights, i.e., wrongful use, distribution, or copying of its software.  Any claims of the taking of intellectual property rights would have been preempted by the copyright claims.  *Id*.  The TTLA claim required only that Plaintiff defend against the taking of physical property at the time he left Defendant's employ.

With respect to Defendant's TTLA claim, the Court found insufficient evidence that Plaintiff

6

personally stole property from Defendant prior to the end of his employment.  Sheila and Roger

Darisse testified that after Plaintiff's employment with Defendant ended, they noticed missing items.

They further testified that they believed Plaintiff had stolen the items; however, they admitted that

their belief was based on speculation and not on any personal knowledge.  The Court found that

Sheila and Roger Darisse were not credible witnesses.

Defendant also introduced at trial surveillance video from Friday, July 16, 2004, Plaintiff's

last day of work.  The video showed an unrecognizable person walking in and out of Defendant's

building over about a four-minute time span.  Sheila Darisse testified that the person on the

surveillance video had to be Plaintiff because he was the only person still at the workplace when she

left.  The Court found her testimony to be pure speculation.  Further, the Court found that the video

did not show what, if anything, was removed from the building.  Plaintiff testified that he removed

some personal items from the building that night, including a personal computer and a personal

refrigerator.  Sheila Darisse testified that she wrote a list of missing items on July 27, 2004.  The

Court found neither evidence that Defendant routinely inventoried its property in the office area nor

evidence connecting the items on the list to Plaintiff.  The Court noted that: (1) two other employees

were recently fired, both of whom had the same access to these items as Plaintiff; and (2) none of

these items appeared in the surveillance video.  The Court concluded that the evidence neither

showed nor supported an inference that Plaintiff took Defendant's property when he left.

Plaintiff did not have to overcome Defendant's theft claim in order to fully recover on his

copyright infringement claim against Defendant.  Moreover, with proper evidence, Plaintiff  could

have prevailed on his copyright infringement claim irrespective of whether he did or did not take

physical property from Defendant when he left.  The theft claim involved, in part, an allegation that

Plaintiff took the tangible form of Micore and LCI computer software, software unrelated to the Convertor or the Decode.  Plaintiff's counsel did not render the same discrete legal services with respect to (1) Plaintiff's claim for copyright infringement based upon Defendant's use of the Convertor and the Decode in Defendant's site monitoring programs, and (2) Plaintiff's defense of the theft of physical property claim.   Neither the majority of the general legal services nor the majority of issue-specific legal services in this case related to both Plaintiff's copyright infringement claim and his defense of Defendant's TTLA counterclaim.

Under Texas law, if any attorney fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gulo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 -314 (Tex. 2006).   Intertwined facts do not make recoverable fees for claims on which attorney fees are not allowed.  *Id*.  Only when discrete legal services advance both  recoverable and unrecoverable claims are they so intertwined that they need not be segregated.  *Id*.  Plaintiff has segregated from the requested attorney fees only the legal services rendered before the TTLA counterclaim was filed and the legal services related to the bankruptcy. Plaintiff claims that recoverable core services are: (1) generally necessary legal services; (2) services in defense of Defendant's TTLA counterclaim; and (3) services he claims are intertwined with the defense of the TTLA counterclaim.  Plaintiff  estimates that 60% of the recoverable core services were necessary for Plaintiff's defense of Defendant's TTLA counterclaim.  Plaintiff seeks attorney fees of $124,045.65.  The Court denies the amount requested because it is: based upon the erroneous assertion that the attorney fees on the theft claim were inseparably intertwined with Plaintiff's copyright infringement claims; excessive; unreasonable; and the result of failure to exercise proper billing judgment.

Defendant claims that because Plaintiff failed to segregate its attorney fees after it objected to the failure to segregate, Plaintiff is not entitled to any fees.  Defendant relies upon dicta in *Apache Corp. v. Dynegy Midstream Services, Ltd. Partnership*, 214 S.W. 3d 554, 566 (Tex. App.-- Houston [14th Dist.] 2006, no pet.) (citing *Green International, Inc. v. Solis*, 951 S.W. 2d 384,389 (Tex. 1997)).  However, the Texas Supreme Court has neither explained the circumstances under which an attorney fee claimant's failure to segregate would result in a recovery of zero fees nor stated that failure to segregate will or must result in zero recovery.  *See AMX Enterprises, L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 523-24 (Tex. App.--Fort Worth 2009, no pet.).  Additionally, *Solis* predates *Chapa* in which the Texas Supreme Court held that a claimant's failure to segregate fees does not mean that the claimant cannot recover any fees because unsegregated attorney fees for the entire case are some evidence of what the segregated amount should be.  *See Chapa*, 212 S.W.3d at 314.  Accordingly, the Court will consider the unsegregated attorney fees for core services in determining what attorney fees are compensable as reasonable and necessary in this case.[2]

A federal court applies state law in determining whether and in what amount to award attorney fees in a case governed by state law.  *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002). The TTLA states that a prevailing party shall recover "reasonable and necessary attorney's fees." *See* Tex Civ. Prac. & Rem. Code § 134.005(b) (Vernon 2007); *Beaumont v. Basham,* 205 S.W.3d 608, 621-22 (Tex.App.–Waco  2006, no pet).  A sister court recently searched for cases analyzing what constitutes "reasonable and necessary attorney's fees" permitted by § 134.005(b) and

_____

[2] Defendant filed a Surreply and Plaintiff filed a Supplemental Appendix concerning whether, based upon an alleged oral agreement between Plaintiff and his counsel for payment, the Court should take judicial notice that the usual and customary fees requested by Plaintiff are reasonable.  The Court finds that the alleged oral agreement is not determinative of the amount of a reasonable attorney fee for defense of the TTLA claim.

9

found only one case, a case which did not set forth a standard. *Fidelity & Deposit Co. of Maryland v. Rodriguez*, No. 3:09-CV-76-KC, 2009 WL 2382979 at *3 (W.D. Tex. June 10, 2009) (citing *Beaumont*, 205 S.W.3d at 621-22)). The Texas Disciplinary Rules of Professional Conduct set forth factors that courts may use in determining the reasonableness of the attorneys fees.   *See* Tex. Disciplinary R. Prof. Conduct 1.04, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G.App. (State Bar Rules, art. X, § 9). These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* The Texas Supreme Court has adopted these factors for determining the reasonableness of attorney fees generally. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 818-19 (Tex. 1997); *see also Stegall v. Stegall,* 571 S.W.2d 564, 566-67 (Tex. App.–Fort Worth 1978, no

10

pet.) ("The elements to be considered by the trier of fact in its determination of a reasonable amount of attorneys' fees include the nature and complexity of the case, the amount in controversy, the amount of time and effort required, and expertise of counsel.") (citations omitted).  Texas courts have also employed the "lodestar" method, the method that federal courts generally apply.  *Borg-Warner Protective Servs Corp.v. Flores*, 955 S.W.2d 861, 870 (Tex. App.–Corpus Christi 1997, no pet.) (citations omitted).  The "lodestar" method requires courts to first determine the number of hours reasonably spent by counsel on the matter, then multiply those hours by an hourly rate the court deems reasonable for similarly complex, non-contingent work.  *Id*.  After the court has establishes the "lodestar" figure, it then considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case.  *Id.*; *see also Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 324 (5th Cir. 1995)).   In making a lodestar adjustment, courts look to twelve factors, known as the *Johnson* factors, because they originated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974).   These factors are "substantially similar" to the factors adopted by the Texas Supreme Court.[3]  *See  AIM Group, Inc. v. Golden*, 2007 WL 491199, at *3 (Tex.App.--Houston [1 Dist.] 2007, no pet.).

The court "must select an appropriate hourly rate based on prevailing community standards

---

[3] The *Johnson* factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Migis,* 135 F.3d at 1047 (citing *Johnson,* 488 F.2d at 717-19).

for attorneys of similar experience in similar cases."  *Shipes v. Trinity Indus.*, 987 F.2d 311, 319

(5th Cir. 1993) (*"Shipes II"*).  The court then multiplies the number of compensable hours by the

selected hourly rate to produce the lodestar amount.  *Id.*; *see also Rutherford v. Harris County, Tex.*,

197 F.3d 173, 192 (5th Cir. 1999) (citing *League of United Latin Am. Citizens # 4552 v. Roscoe*

*Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997)).  The burden to substantiate both the

requested hours and the hourly rates rests upon the movant.  *Hensley v. Echkerhart,* 461 U.S. 424,

437 (1983).  Once the lodestar has been determined, the court may adjust it upward or downward

if the *Johnson* factors not "already considered in calculating the lodestar" warrant such an

adjustment.  *Shipes II*, 987 F.2d at 320) (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir.

1980)).  However, the lodestar is presumptively reasonable and should be modified only in

exceptional cases.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

Determinations of hours and rates are questions of fact, and the fee applicant bears the

burden of providing the necessary documentation that will allow the reviewing court to identify the

distinct claims.   *Hensley*, 461 U.S. at 437; *see also Stegall,* 571 S.W.2d at 566 ("An award of

attorneys' fees is a question for the trier of fact.") (citing *Int'l Sec. Life Ins. Co. v. Spray,* 468 S.W.2d

347, 349 (Tex. 1971)).

## Analysis

This case was filed on March 16, 2005, and tried to this Court on February 25, 2008.

Needless to say, the Court is thoroughly familiar with the extensive pleadings, discovery, motions,

evidence, credibility of witnesses, and the result -- a take-nothing judgment for all parties.

The court's first step in calculating the amount of a reasonable attorney fee is to "determin[e]

the compensable hours from the attorneys' time records, including only hours reasonably spent."

*Shipes II*, 987 F.2d at 319.  When the documentation of hours is not adequate, the court may reduce the number of compensable hours.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may also exclude any hours that it determines "are excessive, redundant, or otherwise unnecessary." *Id.* at 434.  The District Court has recognized that "the term block billing 'refers to the time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"   *Barrow v. Greenville Indep. School Dist.*, No. 3:00-CV-0913-D, 2005 U.S. Dist. LEXIS 34557, at *10 (N.D. Tex. Dec. 20, 2005), aff'd 2007 U.S. App. LEXIS 24778 (5th Cir. Oct. 23, 2007) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1554 n.15 (10th Cir. 1996)).

The Court has considered the Declaration of Mack Ed Swindle.  Taking into consideration the Declaration in addition to the Court's knowledge of reasonable and customary fees for defending a theft claim, the Court finds that attorney fees of $385 for lead counsel, $150 for associates, and paralegal rates from $60 to $150 are customary and reasonable for services performed in defending the TTLA counterclaim.  Accordingly, the Court will determine the lodestar based upon these rates.

**Deficiencies in Plaintiff's Billing Records**

Defendant objects and the Court agrees that Plaintiff's failure to allocate the fees incurred to the five legally separate persons and entities in this litigation is a deficiency.  The parties include not only Plaintiff and Defendant, but other  Defendants DTS, and Roger Darisse; and Third Party Defendant SMS.  Further, the Court finds deficient Plaintiff's failure to allocate the fees to the parties' various causes of action, to failed claims, and to those that Plaintiff voluntarily dismissed before trial.  Plaintiff brought claims for copyright infringement, breach of contract, fraud,

13

conspiracy, conversion, unfair competition, and trademark infringement. Defendant counterclaimed against Plaintiff for conversion, breach of fiduciary duty, violation of the TTLA, copyright infringement, trade secret misappropriation, civil conspiracy, tortuous interference with existing contracts, unfair competition, and trademark infringement.   Thus the TTLA claim was only one of sixteen claims that Plaintiff either brought or defended against.   Further, Plaintiff's billing records include "block billing."   For example, the records contain entries such as "review case and discovery needs," "prepare case for trial," "final preparation for trial," "representation in trial-first day," "preparation for next day of trial," "interoffice conferences," and "legal research."

The Court will first determine the lodestar amount: the number of hours reasonably spent by counsel on the theft issue multiplied by an hourly rate the Court deems reasonable for similarly complex, non-contingent work.   The TTLA claim was fact specific and should not have required extensive legal research or preparation.   As stated previously, the alleged taking involved only physical personal property, not intellectual property.   In determining a reasonable attorney fee for the TTLA claim, the Court will disregard billing that cannot be determined to relate to the TTLA claim.   The Court will also disregard block billing, billing that is excessive to the needs of defending the TTLA claim, and entries which are not the result of good billing judgment.

## Determination of the Lodestar Amount

### Trial

The Court reiterates that not only does this Court have personal recall of the trial and proceedings in this case, but the Court reviewed the very extensive record as well.   The trial of the

14

TTLA claim consisted of the testimony of Sheila Darisse, the introduction and playing of a videotape for Defendant, and the testimony of Plaintiff in his own defense. A generous estimate of the amount of trial time consumed by this issue is 1.5 hours. The TTLA evidence came on the second day of trial. Plaintiff bills a total of $5,812.50 for the second day of trial for two attorneys based on 11.50 and 10 hours for lead and associate counsel, respectively. The Court finds that a reasonable rate for lead counsel is $385 and a reasonable rate for associate counsel is $150 per hour. The Court determines the proportion compensable as reasonable and necessary for defense of the counterclaim at trial to be 1.5 hours for lead counsel at $385 and 1.5 hours for associate counsel at $150 for a total of $802.50

### Trial Preparation

Reasonable trial preparation for the TTLA claim would encompass review of seven pages of the deposition of Sheila Darisse, review of Defendant's videotape, and preparing Plaintiff for his testimony. Plaintiff requested .20 hours at $150 for reviewing and processing the deposition transcript. This request for $30 is reasonable. The Court further finds that the 1.5 hours for lead counsel at $385 and 1.5 hours for associate counsel at $150 is reasonable for reviewing Defendant's evidence of theft and preparing for trial. Additionally, one hour of lead counsel time at $385 preparing Plaintiff for his testimony is reasonable. In sum, the Court finds the proportion compensable as reasonable and necessary for trial preparation for defending the TTLA counterclaim to be 2.5 hours for lead counsel at $385 and 1.7 hours for associate counsel at $150 for a total of $1,217.50 for trial preparation for the TTLA claim.

### Deposition Preparation, Deposition, and Discovery

With respect to discovery regarding the TTLA counterclaim, deposition questions of Sheila

15

Darisse, Defendant's corporate representative, consumed approximately seven pages of a 280-page deposition.  The total fees Plaintiff bills in preparation for and taking the deposition are $3,454.50 at mixed rates.  The Court finds that a reasonably proportional fee for the deposition and deposition preparation in connection with the TTLA counterclaim is 1.5 hours at $150 for associate counsel and 1.5 hours  at $385 for lead counsel for a total of $802.50.   For other discovery regarding the TTLA counterclaim, the Court finds that 1.5 hours at $150 for associate counsel and 1 hour at $60 for a paralegal is reasonable and necessary for a total of $285.   In sum, the Court finds the proportion compensable as reasonable and necessary for deposition preparation, deposition, and discovery in defending  the TTLA counterclaim to be a total of $1,087.50.

### Receipt and Review of Answer, Counterclaim, and Third Party Claims

Plaintiff requests a total of $4,635 at mixed rates on various days for receipt and review of the Answer, the Counterclaim, and Third Party Claims and preparation of answers.  The Court finds the proportion compensable as reasonable and necessary in defending  the TTLA counterclaim to be one hour for lead counsel at $385 and one hour for associate counsel at $150 for a total of $535. This brings the lodestar amount for defense of the TTLA counterclaim to $3,642.50.

### Summary Judgment Motions

A federal court adjudicating a claim arising out of state law applies state substantive law and federal procedural law to discourage forum shopping and avoid the inequitable administration of laws. *Erie Railroad v. Tompkins,* 304 U.S. 64 (1938); *Hanna v. Plumer,* 380 U.S. 460, 468 (1965). "A no-evidence motion for summary judgment, however, is a pleading that may be filed in state court, but not federal court." *BB Energy LP v. Devon Energy Production Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008) (citing, *Casteneda v. Flores,* No. 5:05-CV-0129, 2007 WL 1671742, at *2 (S.D. Tex. June 8, 2007)).[4] Under the Federal Rules of Civil Procedure, the movant must refer to the record to show the absence of genuine issues of material fact. *Id. See Trautmann v. Cogema Mining, Inc.*, 2007 U.S. Dist. Lexis 39387 (S.D. Tex. 2007) ("[I]t is an inescapable deduction of controlling case law that strict adherence to the federal [summary judgment] standard, and only the federal standard, is the correct approach."); *Cardner v. Home Depot U.S.A., Inc.,* 2006 U.S. Dist. Lexis 17753, 4-5 (E.D. Tex. 2006) ("A no evidence motion for summary judgment is only available in the Texas state courts. ... Accordingly, the court will apply the appropriate federal standard to the [d]efendant's motion for summary judgment.");

---

[4] Under Texas law:

> After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial . . . . The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.

TEX. R. CIV. P. 166a(I).

*Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005) ("[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in . . . federal summary judgment procedure."). While not required to produce evidence, a moving defendant may not rely on a mere recitation of the conclusory statement that the record contains no evidence of the elements of a claim. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2005); *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993).

Plaintiff prepared and filed two separate motions for summary judgment entitled "Combined Traditional and No Evidence Motion[s] for Summary Judgment." (Doc. 79, 108). However, only the so-called "no evidence" summary judgments relate to Defendant's TTLA counterclaim. Plaintiff made the conclusory argument that summary judgment was proper on Defendant's claims under the Texas Theft Liability Act because "there [was] no evidence to support any of [the] essential elements [of this claim]."

Plaintiff's motion for summary judgment on the TTLA counterclaim based upon state, not federal, procedure was frivolous at best. *See Seastrunk v. Darwell Integrated Tech.*, No. 05-CV-129, 2007 WL 1671742, at *1-2 (N.D. Tex. Jan. 22, 2008) (slip op.). In the exercise of good billing judgment, Plaintiff should not have claimed attorney fees for bringing these motions. Nevertheless, Plaintiff seeks attorney fees for the services rendered in connection with the summary judgment motions as part of the core services. This Court disallows as unreasonable, unnecessary, and not an exercise of good billing judgment any attorney fees sought in connection with Plaintiff's motion for summary judgment on the TTLA counterclaim. All other time spent seeking summary judgment is disallowed as unrelated to the TTLA claim. This leaves the lodestar amount for defense of the TTLA counterclaim at $3,642.50.

**Attorney Fee Litigation**

Percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment. *See Barrow*, 2005 U.S. Dist. LEXIS 34557, at *17 ("[M]ost courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure." (citing *Paris v. Dallas Airmotive, Inc.*, 2004 WL 2100227, at *9-*11 (N.D. Tex. Sept. 21, 2004) (Lindsay, J.)), and ("The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." (quoting *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996)).

Plaintiff's billing records reflect an attorney fee of $37,970 for litigating his claim for the award of attorney fees. This amounts to a total of 241.35 attorney hours at rates from $150 per hour to $385 per hour. It is commonly understood that to *bill* eight hours in one day, an attorney must usually work more than eight hours. Although this Court does not agree with Defendant's contention that Plaintiff willfully misled the Court about the theft claim's being inextricably intertwined with his copyright claim, the Court does find that a claim for 241.35 hours is excessive in relation to what was reasonably necessary to litigate the claim for attorney fees under the TTLA. This amount equals more than 30 eight-hour days. Plaintiff unnecessarily compounded this attorney fee proceeding by: (1) failing to plead for attorney fees under the TTLA in response to Defendant's counterclaim under the TTLA; (2) failing to respond to Defendant's discovery requests regarding billing; (3) failing to segregate the fees for defending the TTLA counterclaim; (4) failing to even attempt to segregate the attorney fees when ordered to do so by this Court; and (5) using deficient billing practices including billing excessive hours and failing to exercise billing judgment. After

19

a thorough review of the pleadings, billing record, declarations, and the parties' arguments, the Court holds that a reduction of 80% of the $37,970 billed for litigating the attorney fee claim is necessary to assure that only reasonable and necessary attorney fees are compensated. Accordingly, the Court holds that the lodestar amount for litigating the issue of attorney fees is $7,594.

Plaintiff has not met his burden to show facts that would entitle him to an award of $124,045.65, the amount he requests. Considering the proportionality of the TTLA claim to the litigation as a whole and the time and labor reasonably required to defend the TTLA counterclaim, the Court has determined that the lodestar fee for the defense of the counterclaim is $3,642.50 and the lodestar amount for the attorney fee litigation is $7,594, for a total of $11,236.50.

### Whether Enhancement or Reduction of the Lodestar Amount is Warranted

The Court will now consider the *Arthur Andersen* factors to determine whether enhancement or reduction of the lodestar amount is warranted. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d at 818-19. The first factor is the time and labor, the difficulty of questions, and the skill required by the recoverable legal services.

Plaintiff argues as follows:

> Much of the pleading, discovery, motion and trial phases of this case involved the identification and ownership of certain computer code. The defense of DIT's TTLA counterclaim required Seastrunk's attorneys and paralegals to become knowledgeable of difficult and technical issues regarding software and firmware architecture and function so that they could work with their own computer code expert and challenge DIT's expert. See App. 4, ¶10. And during the motion phase especially, Seastrunk's attorneys and paralegals briefed and applied complex elements of copyright infringement law (e.g., comprehensive literal copying) to demonstrate that DIT was using Seastrunk's code and that Seastrunk had not stolen DIT's code.

(Doc. 166 at 14.)  Based on this Court's knowledge of this entire case from initial pleadings through the bench trial and post trial proceedings, the Court disagrees.   As the Court previously discussed, Plaintiff's theory that the copyright claims were inextricably intertwined with the theft of physical property which included software in its tangible form and snacks is without merit.  The first factor does not warrant any change in the lodestar amount.  The Court has considered the second, fifth, sixth, and eighth factors and finds that they do not require enhancement or reduction of the attorney fees in this case.  (For the factors, *see infra* at 10).  Further, the third, fourth, and seventh factors are subsumed in the Court's determination of  the reasonable and necessary attorney fees in this case and the rate of compensation. (*Id.*)

## Conclusion

The Court finds that the lodestar fee is presumptively reasonable and that neither party has shown that the *Arthur Andersen* factors require either an upward or a downward departure from the lodestar amount.   Accordingly, on *de novo* review, the Court awards Plaintiff reasonable and necessary attorney fees of $11,236.50 under the TTLA.  Further, the Court finds that Plaintiff  shall recover $1,728 in taxable court costs.

**SO ORDERED**, August 27, 2009.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE